# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ABT ELECTRONICS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17-cv-2801 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| AIRGROUP CORPORATION a/k/a ) | |
| RADIANT GLOBAL LOGISTICS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In its First Amended Complaint, Plaintiff ABT Electronics, Inc. ("Plaintiff") brings claims against Defendant Airgroup Corporation a/k/a Radiant Global Logistics, Inc. ("Defendant") for liability under the Carmack Amendment, 49 U.S.C. § 14706 (Count I), fraud (Count II), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* (Count III). Currently before the Court is Defendant's motion [15] to dismiss Counts II and III of the First Amended Complaint as preempted by the Carmack Amendment. For the reasons explained below, Defendant's motion [15] is granted. Counts II and III in the First Amended Complaint are dismissed. This case will be set for further status hearing after the parties file a revised status report on March 15, 2018.

## I. Background[1]

Plaintiff is an appliance and electronics retailer headquartered in Illinois. [12, ¶ 1.] Defendant is a logistics and freight forwarding company organized in the state of Washington. [*Id.*, ¶ 2.] During the time period relevant to the complaint, Defendant performed freight

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

forwarding services for Plaintiff by arranging for the transportation of Plaintiff's consumer goods, including televisions and other electronics ("the goods"), to customers throughout the United States. [*Id.* ¶ 3.] Defendant would take possession of the goods at Plaintiff's warehouse in Glenview, Illinois and then transport them to their intended destination. [*Id.*, ¶¶ 3, 6.] The parties operated under the terms of a Tariff Rate Agreement that Defendant issued to Plaintiff in April 2015, under which Defendant committed to deliver the goods to customers within six business days of taking possession of the goods from Plaintiff. [*Id.*, ¶¶ 7–8.]

Plaintiff alleges that, from October 31, 2016 to December 8, 2016, during Plaintiff's busy holiday season, Defendant failed to deliver the goods to Plaintiff's customers within six business days. According to Plaintiff, delivery times on 2,185 out of 2,750 of these shipments exceeded ten days and sometimes took up to seventy days. [*Id.*, ¶¶ 9–10.] When Plaintiff contacted Defendant about the status of these delayed deliveries, Defendant misrepresented their status and did not provide valid tracking numbers for them to Plaintiff and its customers. [*Id.*, ¶ 12.] Plaintiff claims damages for the loss in value to the goods during this unreasonably long transportation period. [*Id.*, ¶ 11.] Plaintiff further alleges that Defendant's delay in delivering the goods resulted in customer complaints, negative reviews from customers, and the need for Plaintiff to issue credits, discounts, and gift cards, and re-shipments to customers in order to mitigate its damages from this delay. [*Id.*]

Plaintiff further alleges that, in September 2016, the parties agreed to an "Enhanced Service" delivery service that Defendant would make available when delivering Plaintiff's goods (specifically, televisions) to Plaintiff's customers. This Enhanced Service consisted of using a two-man crew to perform white glove delivery and set up of the televisions at a customer's home. [*Id.*, ¶ 32.] The parties agreed that the fee for this Enhanced Service delivery would be

$150 for televisions less than 150 pounds and $1 per pound for televisions more than 150 pounds. This pricing was confirmed in a Tariff sheet that Defendant issued to Plaintiff in September 2016. [*Id.*, ¶¶ 33–35.] This fee was to be all-inclusive with no further delivery charges. [*Id.*, ¶ 33.] According to Plaintiff, in February 2017, Defendant invoiced Plaintiff $177,451.51 for Enhanced Service delivery on all orders shipped from November 25, 2016 to December 7, 2016. [*Id.*, ¶¶ 41–42.] This charge was not authorized for all of these shipments; this charge also was not all-inclusive as the parties had agreed it would be. [*Id.*, ¶¶ 42–43.] Moreover, after Plaintiff surveyed a sample of its customers from these invoiced deliveries regarding their delivery experience, Plaintiff determined that most of these customers had not actually received the Enhanced Service delivery for which Plaintiff had been invoiced by Defendant. [*Id.*, ¶¶ 45–46.] Plaintiff alleges that Defendant knew that this invoicing was improper and knew or should have known that the Enhanced Service delivery was not being performed in connection with these deliveries. [*Id.,* ¶ 47.]

Plaintiff sued Defendant in Illinois state court in March 2017, and Defendant thereafter removed the action to this Court. [See 1.] On May 25, 2017, Plaintiff filed its First Amended Complaint. [See 12.] In its First Amended Complaint, Plaintiff brings a claim for damages under the Carmack Amendment, 49 U.S.C. § 14706, for Defendant's unreasonably delay in delivering Plaintiff's goods to its customers (Count I). Plaintiff also brings claims for fraud and for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") for fraudulently invoicing Plaintiff for Enhanced Service delivery that was not authorized and largely not performed (Counts II and III). On June 14, 2017, Defendant filed a motion to dismiss Counts II and III of the First Amended Complaint pursuant to Rule 12(b)(6), which is currently before the Court.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

## III. Analysis

Defendant argues that Counts II and III of the First Amended Complaint must be dismissed because these state law claims alleging delay and damage to the goods are preempted by the Carmack Amendment. Plaintiff responds that Counts II and III focus on allegations of fraudulent billing practices subsequent to Defendant's allegedly negligent delay and handling of

4

the goods. According to Plaintiff, this constitutes a separate and independent harm and thus is not preempted by the Carmack Amendment.

The Interstate Commerce Act contains several provisions governing a motor carrier's liability to a shipper for the loss of, or damage to, an interstate shipment of goods. *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 453 (7th Cir. 1996). These provisions are commonly referred to collectively as the Carmack Amendment. The Carmack Amendment provides shippers with the statutory right to recover for actual losses or injuries to their property caused by carriers involved in the shipment.[2] *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 285–86 (7th Cir. 1997). The Carmack Amendment limits the carrier's liability to the "actual loss or injury to the property" damaged en route.[3] *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.* 519 F.3d 693, 697 (7th Cir. 2008) (citing 49 U.S.C. § 14706(a)(1)). Recoverable damages include "damages for delay, lost profits (unless they are speculative), and all reasonably foreseeable consequential damages." *Am. Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 931 (7th Cir. 2003) (citations omitted).

---

[2] The Carmack Amendment states, in relevant part:

> A carrier providing transportation or service subject to the jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States[.]

49 U.S.C. § 14706(a)(1).

[3] The prima facie case under the Carmack Amendment is straightforward: a plaintiff must show "(1) delivery in good condition; (2) arriving in damaged condition; and (3) the amount of damages." *REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.* 519 F.3d 693, 699 (7th Cir. 2008) (citation and internal quotation marks omitted). If the plaintiff establishes the prima facie case, the burden shifts to the defendant "to show that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Id.* (citation and internal quotation marks omitted).

Prior to the enactment of the Carmack Amendment, disparate schemes of carrier liability existed among the states, some of which allowed carriers to limit or disclaim liability, whereas others permitted full recovery. *REI Transp.*, 519 F.3d at 697. Thus, a carrier could have been "held liable in one court when under the same state of facts he would be exempt from liability in another." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913). This patchwork of regulation made it "practically impossible for a shipper engaged in a business that extended beyond the confines of his own state * * * to know * * * what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another." *Id.* To solve this problem, the Carmack Amendment "create[d] a national uniform rule of carrier liability concerning interstate shipments." *Pinkerton*, 89 F.3d at 455; see also *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 307 (5th Cir. 1993) (noting that the purpose of the Carmack Amendment "was to create uniformity out of disparity"). Congress ensured this national uniformity by both placing substantive limits on the rights of carriers to contract away liability and by preempting state causes of action against carriers for damaged or lost goods. *REI Transp.*, 519 F.3d at 697 (citing *Adams Express*, 226 U.S. at 505). The Carmack Amendment's preemptive scope is broad; the Supreme Court has stated that "[a]lmost every detail of the subject is covered so completely that there can be no rational doubt that Congress intended to take possession of the subject and supersede all state regulation with reference to it." *Adams Express*, 226 U.S. at 505–06.

Although this preemptive scope is broad, "it is not all-inclusive." *Schwarz v. Nat'l Van Lines, Inc.*, 2004 WL 1166632, at *4 (N.D. Ill. May 21, 2004). The Carmack Amendment preempts state law and common law claims "if they in any way enlarge the responsibility of the carrier for losses or if they at all affect the ground of recovery or the measure of recovery."

6

*Glass v. Crimmins Transfer Co.*, 299 F. Supp. 2d 878, 885 (C.D. Ill. 2004). But the Carmack Amendment does not preempt state law claims that allege liability "on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce." *Gordon*, 130 F.3d at 289.

In *Gordon*, the plaintiff shipper brought various claims (both liability under the Carmack Amendment and state law claims) against the defendant carrier for destroying some of her belongings and for lying to her about the status of those belongings over a three-month period. 130 F.3d at 285. Defendant argued that all of the plaintiff's state law claims were preempted by the Carmack Amendment. The Seventh Circuit held that the plaintiff's claim for intentional infliction of emotional distress was not preempted, because this claim alleged liability that was "separate and distinct" from the damage to plaintiff's belongings. *Id.* at 289. At the same time, however, the Seventh Circuit held that the plaintiff's claims for breach of contract, willful and wanton misconduct, fraudulent inducement to contract in violation of the ICFA, common law fraud in the inducement, and common law fraud in the claims process were all preempted. *Id.* Regarding fraud in the inducement, plaintiff's claims were "so closely related to the performance of the contract, and the measure of damages for such claims so likely to be the loss or damage to the goods" that they were preempted. *Id.* Plaintiff's claim for fraud in the claims process also was held to be "directly related to the loss or damage to the goods that were shipped" and thus within the Carmack Amendment's preemptive scope. *Id.* at 290. See also *REI Transp.*, 519 F.3d at 698 (the preemptive sweep of the Carmack Amendment includes state causes of action against carriers where goods are damaged or lost in interstate commerce, but "claims that do not affect a carrier's liability for lost or damaged goods * * * do not upend the uniformity effected by the Carmack Amendment and are therefore not preempted.").

Here, Plaintiff brings in Count I a Carmack Amendment claim against Defendant, alleging that Defendant was responsible for transporting Plaintiff's goods in interstate commerce, and Defendant's unreasonable delay in delivery of those goods caused damage. [12, ¶¶ 13–27.] Plaintiff also brings claims in Counts II and III for fraud and for violation of the ICFA. [12, ¶¶ 28–54.] Plaintiff bases these claims on Defendant's issuance of invoices in February 2017 that include Enhanced Service delivery charges that were not authorized or approved, were not all-inclusive as the parties had agreed they would be, and were for services that were not actually provided in connection with many of the deliveries of Plaintiff's goods to its customers. [*Id.*, ¶¶ 41–48.] According to Plaintiff, this fraud "is independent from any shipping of goods and independent from any loss or damage from shipped goods" and thus not preempted by the Carmack Amendment. [21 at 4–5.]

The Court agrees with Defendant, however, that the claims in Counts II and III ultimately are "so closely related" to the performance of the shipping contract between the parties, *Gordon*, 130 F.3d at 289, that they are preempted by the Carmack Amendment. See *McGinn v. JB Hunt Transp., Inc.*, 2012 WL 124401, at *3 (E.D. Wis. Jan. 12, 2012) (the relevant inquiry in determining whether a state law claim will be preempted is "whether the state law claim is really a claim for damages to the shipper's goods in disguise"). Plaintiff alleges in Count I that Defendant failed to transport the goods with "reasonable dispatch," as it was required to do under the 2015 Tariff Rate Agreement, for the shipments for which it invoiced Plaintiff from October 31, 2016 to December 8, 2016. Plaintiff alleges in Counts II and III that Defendant charged Plaintiff for Enhanced Service delivery on all orders shipped from November 25, 2016 to December 7, 2016—even though these charges were unauthorized and the service was not performed in many cases. These are the same interstate transactions that are at issue in Count I

and therefore relate to the same goods that Defendant allegedly damaged through its failure to deliver them with reasonable dispatch.

Moreover, in Counts II and III, Plaintiff incorporates its allegations in paragraphs 1 through 12. [12, ¶¶ 28, 50.] In these paragraphs, Plaintiff alleges that (1) Defendant transported consumer goods in interstate commerce for Plaintiff; (2) Defendant invoiced Plaintiff for these services from October 31, 2016 to December 8, 2016; and (3) Defendant's unreasonable delay in delivering these goods caused damage. These deliveries and these goods are also at issue in Counts II and III. See *Miller v. Reebie Storage & Moving Co., Inc.*, 1993 WL 414689, at *3 (N.D. Ill. Oct. 15, 1993) (noting that plaintiff, by incorporating the introductory paragraphs of her complaint alleging damage to shipped goods, implicated "the existence of the contract generally, and the nature and quality of services provided by [defendant] in particular," and thus plaintiff's claims were preempted by the Carmack Amendment).

On balance, the Court concludes that the harm that Plaintiff alleges in Counts II and III is not separate and distinct from the harm alleged in Count I, but it is instead inextricably linked to Defendant's performance of its duties as a carrier subject to liability under the Carmack Amendment and its delivery of the goods at issue in Count I. See *Brightstar Int'l Corp. v. Minuteman Int'l*, 2011 WL 4686432, at *3 (N.D. Ill. Oct. 4, 2011) (noting that non-preempted state causes of actions against common carriers are allowed to proceed only "because the acts of the tortfeasors were not in any way a reasonable part of, or a foreseeable consequence of, interstate shipping"); *Schwarz*, 2004 WL 1166632, at *8 (holding that constructive fraud claim alleging that the defendant had misled plaintiff regarding the safe and timely delivery of her goods was preempted by the Carmack Amendment); *Neely v. Mayflower Transit, LLC*, 2003 WL 23648655, at *3 (N.D. Ill. Aug. 4, 2003) (holding that ICFA claim, which concerned conduct

that occurred before the shipping contract had been executed, was derived from the shipping contract, and thus was preempted); *Miller*, 1993 WL 414689, at *3–4 (holding that claims for consumer fraud and deceptive advertising were preempted by the Carmack Amendment because they "rely upon * * * the quality of the services which [defendant] provided"); *York v. Day Transfer Co.*, 525 F. Supp. 2d 289, 300 (D.R.I. 2007) ("Claims * * * based on lingering and consequential effects of conduct performed in the transportation, shipment, and claims process are subject to preemption."). The state law claims in Counts II and III therefore are preempted by the Carmack Amendment. See *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir. 1997) (preempted state law claims "include all liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the payment of claims").

Plaintiff's main argument in opposition is that Counts II and III allege separate and independent harms that are not preempted because they "exist with or without damage to a shipment." [21, at 3]. But this argument misses the mark. In *Gordon*, the Seventh Circuit held that an ICFA claim alleging fraudulent inducement to contract was preempted, even though "a fraudulently induced contract could be executed perfectly." *Gordon*, 130 F.3d at 289 (citing *Nowakowski v. Am. Red Ball Transit Co.*, 680 N.E. 2d 441 (Ill. App. Ct. 1997)). Other federal courts have found state-law fraud claims to be preempted in similar situations. See, *e.g.*, *White v. Mayflower Transit, L.L.C.*, 543 F.3d 581, 584–85 (9th Cir. 2008) (the Carmack Amendment barred claims for fraud and improper billing); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 307 (5th Cir. 1993) (holding that the Carmack Amendment preempts state law claims for fraud and violations of the Texas Deceptive Trade Practices Act). As the court in *Gordon* noted, fraud claims relating to either contract formation or the claims process, such as the *Gordon* plaintiff's ICFA claim and common law fraud claims, are preempted because of their close relationship to

the performance of the contract of carriage itself, and because the measure of damages for these claims is "so likely to be the loss or damage to the goods." *Gordon*, 130 F.3d at 289; see also *Nowakowski*, 680 N.E. 2d at 444 (preempting ICFA claim alleging that defendants had fraudulently deprived shippers of the benefit of insurance for goods damaged in transit because the claim "in essence seeks compensation for the damage that defendants caused in transporting plaintiffs' goods interstate"). Plaintiff's fraud claims in Counts II and III relate to the goods in Defendant's allegedly damaged deliveries. Plaintiff alleges that Defendant issued fraudulent invoices and made misrepresentations to induce payment from Plaintiff for these same allegedly damaged deliveries. [12, ¶¶ 48, 54.] Therefore, although the allegedly fraudulent invoices may exist separately from the alleged damage to the goods, Plaintiff's fraud claims are essentially seeking to expand Defendant's liability for these same allegedly damaged goods. *Gordon*, 130 F.3d at 289; *McGinn*, 2012 WL 124401, at *3.[4] Allowing Plaintiff to pursue these claims would allow it to expand Defendant's liability, which is inconsistent with the Carmack Amendment's goal of promoting uniformity and predictability for interstate carriers. *Pietro Culotta Grapes Ltd. v. S. Pac. Transp. Co.*, 917 F. Supp. 713, 714 (E.D. Cal. 1996).

Additionally, the "separate and distinct" harm exception for the preemption of state law claims that *Gordon* articulates is narrow and typically involves claims for personal injury or intentional infliction of emotional distress, neither of which Plaintiff alleges. See *McGinn*, 2012 WL 124401, at *3 (claims for infliction of bodily injury sustained due to negligent loading of goods were not preempted because they alleged a separate, independently actionable harm);

---

[4] Although Plaintiff notes that the allegedly fraudulent invoices were issued subsequent to the transportation of the allegedly damaged goods, [21, at 1], this does not change the result. Even though Plaintiff alleges that these invoices were issued in February 2017, Plaintiff also alleges that these invoices were for orders shipped in 2016—the same orders that Plaintiff alleges were damaged. [12, ¶¶ 41–42.] The timing of the invoices is irrelevant, as the alleged fraudulent conduct and the fraud claims "are contingent on and derived from the shipping contract." *Neely*, 2003 WL 23648655.

*Hubbard v. All States Relocation Servs., Inc.*, 114 F. Sup. 2d 1374, 1377 (S.D. Ga. 2000) (claim for intentional infliction of emotional distress is not preempted if it alleges "an injury separate and apart from the damage to the goods"); *Lamm v. Bekins Van Lines Co.*, 139 F. Supp. 2d 1300, 1312 (M.D. Ala. 2001) (noting that Alabama-law outrage claim would not be preempted because plaintiff's allegations stemmed from witnessing "the drunken, brawling behavior" of the shippers' employees, which happened independently of whether there was any actual damage to the goods at issue); see also *Opp v. Wheaton Van Lines, Inc.*, 1999 WL 163041, at *2 (N.D. Ill. Mar. 12, 1999) (denying motion to dismiss common law fraud claim because, at the motion to dismiss stage, the court was unable to determine whether the defendant's allegedly fraudulent demand for payment was more akin to the intentional infliction of emotional distress claim or the fraud claim in *Gordon*, and more evidence was necessary in resolving the issue).

To be sure, some cases have allowed disputes about negligent actions, improper billing practices, or alleged overcharging for services to go forward as separate causes of action. But those cases are distinguishable from the instant case (and thus no help to Plaintiff on this point) because they contain no allegations at all about damage to the goods being shipped. See *Gale v. Ramar Moving Sys., Inc.*, 2013 WL 3776983, at *3 (D. Md. July 16, 2013) (claim for negligence that resulted in damage to the plaintiff's home and non-shipped goods that she owned was not preempted, while any claim related to damage or non-delivery of transported goods was preempted); *Frey v. Bekins Van Lines, Inc.*, 748 F. Supp. 2d 176, 181 (E.D.N.Y. 2010) (state law claims regarding alleged overbilling for household goods shipping services were not preempted where no claims were made that the goods at issue were lost or damaged); *Learning Links, Inc. v. United Parcel Serv. of Am., Inc.*, 2006 WL 785274, at *4 (S.D.N.Y. Mar. 27, 2006) (concluding that plaintiff's common law breach of contract claim alleging that defendant overcharged for

shipments was not preempted by the Carmack Amendment, as the plaintiff "allege[d] no loss, damage, delay or injury to its shipped goods"); *In re EVIC Class Action Litig.*, 2002 WL 1766554, at *10 (S.D.N.Y. July 31, 2002) (antitrust claims against defendant were not preempted where plaintiffs did not allege any loss or damage to goods); see also *Ducham v. Reebie Allied Moving & Storage, Inc.*, 372 F. Supp. 2d 1076, 1079 (N.D. Ill. 2005) ("Ducham's claim of fraud—not at all in connection with the loss of or damage to his goods, but rather in the extortion of a large added payment under duress—are not" preempted).

Here, in Counts II and III, Plaintiff alleges that the goods at issue were damaged by Defendant while being shipped in interstate commerce and, moreover, that Defendant fraudulently invoiced them for the shipments of these damaged goods. The allegations that goods were damaged bring Plaintiff's case within the purview of the Carmack Amendment and thus preempt Plaintiff's remaining state law claims where they increase the potential liability of Defendant for the allegedly damaged goods shipped in interstate commerce. See *Gordon*, 130 F.3d at 289; see also *UPS Supply Chain Solutions, Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1294–95 (11th Cir. 2014) (claim for indemnification of attorney's fees is not preempted because "[e]nforcement of a self-imposed undertaking poses no risk of patchwork regulation or different demands in different jurisdictions"); *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l, LLC*, 632 F.3d 1056, 1062 (9th Cir. 2011) (Carmack Amendment did not preempt California good faith settlement law because it could not increase liability for the carrier nor limit the shipper's recovery). Plaintiff alleges in Counts II and III that Defendant engaged in fraudulent conduct in the delivery and invoicing of goods that Plaintiff also alleges were damaged. "Congress has commanded through the Carmack Amendment that [Defendant] must be sheltered from liability except insofar as it may also engage in conduct that is sufficiently distinct from the contract of

carriage that a separate and independent claim arises." *Gordon*, 130 F.3d at 290. Because Plaintiff does not allege any conduct sufficiently distinct from the parties' contract of carriage for these goods in Counts II and III of the First Amended Complaint, these counts must be dismissed.[5]

## IV. Conclusion

For the foregoing reasons, Defendant's motion [15] is granted. Counts II and III in the First Amended Complaint are dismissed. This case will be set for further status hearing after the parties file a revised status report on March 15, 2018.

Date: February 15, 2018

Robert M. Dow, Jr.
United States District Judge

---

[5] Counts II and III reference two separate agreements under which the parties allegedly operated: the Tariff Rate Agreement setting forth the six-day delivery commitment, [12, ¶ 8], and the tariff sheet issued by Defendant to Plaintiff confirming the agreed pricing for the Enhanced Service delivery, [*id.*, ¶ 35]. It is unclear from the First Amended Complaint whether Plaintiff is claiming that one or the other, or both, of these documents constitutes the "contract of carriage" under which the parties operated. But this does not affect the outcome of this motion. The Carmack Amendment claim, as well as each state law claim, alleges that the same consumer goods were supposed to be delivered by Defendant, but were damaged by delays in delivery. Plaintiff further alleges that Defendant is attempting to charge more for these damaged deliveries than the price that the parties agreed upon for the service. The Court need not address here what terms govern this dispute; whichever terms govern, Plaintiff's claims in Counts II and III allege that Defendant damaged their goods and then subsequently over-charged them for delivery. Such claims are preempted by the Carmack Amendment.

14